UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| KEVIN BENNETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 2:24-cv-00071-JRO-MJD |
| | ) |
| TYLER BORDEN, Correctional Officer, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT AS TO EXHAUSTION DEFENSE**

Plaintiff Kevin Bennett filed this action contending that his constitutional rights were violated while he was a pretrial detainee at the Knox County Jail ("the Jail"). Defendants move for summary judgment arguing that Plaintiff failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before filing this lawsuit. The motion, dkt. [36], is **DENIED** because material issues of fact about the availability of the Jail's administrative remedy process preclude summary judgment. Bennett's declaration made under penalties for perjury states that the Jail's electronic kiosk that inmates may use to submit grievances was not working on the days it was made available to him and that when he notified jail officials of this fact and requested paper grievance forms, officials denied him the forms.

Defendants also filed a motion to strike surreply, dkt. [56], and Bennett filed motions to take notice, dkt. [57], and to strike, dkt. [59]. The motion to take notice is **GRANTED** in part, and the motions to strike are **DENIED.**

## I.

## FACTUAL BACKGROUND

### A. Knox County Grievance Process

The Knox County Jail has a standardized inmate grievance process, which was in place during the time Bennett alleges his rights were violated and is set forth in the inmate handbook. Dkt. 38-1 at 1, 18–23. Although inmates could request and submit grievances on paper forms, inmates primarily submit grievances through an electronic kiosk or handheld device, using a unique PIN number to log in and select the type of communication, including grievance, request, or medical request. *Id.* at 1. The inmate grievance policy sets out four steps with timing requirements:

1. Informal Resolution (Shift Supervisor). Must be filed within 72 hours of the incident.

2. Level 1 Appeal (Captain). Must be filed within 48 hours of the informal response.

3. Level 2 Appeal (Jail Commander). Must be filed within 48 hours of the Level 1 response.

4. Level 3 Appeal (Sheriff). Must be filed within 48 hours of the Level 2 response.

*Id.* at 2, 18–23.

### B. Plaintiff's Attempts at Exhaustion

Bennett is proceeding on his claim that on August 27, 2023, at approximately 4:15 p.m., Defendants Officer Tyler Borden, Sergeant Noah Miller, and Officer Barrett used excessive force against him. *See* Dkts. 17, 21. He was a pretrial detainee, housed in segregation in "A" Holding Area during the relevant

2

timeframe.  Dkt. 45 at 1; Dkt. 52-1 at 1.  This Holding Area is equipped with an electronic kiosk.  Dkt. 45 at 2; Dkt. 52-1 at 1.

During his time at the Jail, Bennett submitted numerous unrelated grievances and appeals.  Dkt. 38-1 at 2, 25-73.  But Bennett did not file a grievance regarding his August 27 claims.  Dkt. 38-1 at 2, 25–73; Dkt. 45 at 1–3.  Pursuant to the inmate grievance policy, Bennett had 72 hours to file his informal grievance after the excessive force incident that is the subject of this lawsuit.  Dkt. 38-1 at 2, 19.  Bennett was transported to a different facility the morning of August 30 and was unable to submit any grievance or appeal after that.  Dkt. 45 at 2; Dkt. 52-1 at 2–3.

### 1. Plaintiff's Version of Events

Bennett reports that he tried to use a kiosk on August 28 to submit a grievance.  But after numerous attempts to log in, staff told him it was not working.  Dkt. 45 at 2.  On August 29, Bennett had a scheduled court date and was gone for most of the day.  *Id.*  When he returned, he asked to use the kiosk, but was told by staff that he was not coming out for recreation time because it was done for the day.  *Id.*  Bennett told staff he needed to file a grievance for the August 17 incident but was denied the use of the kiosk.  *Id.*  Bennett also requested and was denied a paper grievance.  *Id.*  An unnamed staff member allegedly told him he was not going to be allowed to use the kiosk to file a grievance because he knew Bennett would file a lawsuit.  *Id.*  On August 30, Mr. Bennett was transferred to another facility by Captain Kolhouse. Dkt. 54 at 2.  Mr. Bennett told him that he wanted to file a grievance for the August 27

incident, and Captain Kolhouse responded that it didn't matter anymore because he was leaving the jail, and did not provide Mr. Bennett with the means to file a grievance. *Id.*

### 2. Defendants' Version of Events

Bennett was released for recreation on August 28 and 29, and Defendants have submitted video footage and shift logs confirming this fact.  Dkt. 52; Dkt. 52-1 at 2, 9–10; Dkt. 53.[1]  Defendants designate an affidavit from a jail captain, who contacted Combined Public Communications, the company that maintains the kiosks, to confirm that there was no work order regarding the kiosk in "A" Holding Area during Bennett's stay.  Dkt. 52-1 at 1.

On August 28, Bennett was released for recreation from 1:30 p.m. to 2:37 p.m.  *Id.* at 2; Ex. 2(B).  Within a minute of being released, Bennett went to the kiosk and began tapping on the screen.  Ex. 2(B) at 0:53–1:08.  Bennett spoke to the jail officers on several occasions throughout the hour, but the video does not include sound.  *Id.* at 1:40–2:27, 19:18–19:27, 21:58–22:18, 25:32–25:57, 26:07–27:55, 36:00–37:02, 42:05–43:41, 48:06–49:09, 59:07–59:35.  On several occasions, he also waved at several jail staff members outside of the window or walked up to the door or window in attempts to get their attention.  *Id.* at 15:16–16:00,  19:00–19:28,  31:56–32:04,  32:24–32:42,  33:50–35:07,  39:48–40:15, 40:25–40:57.

---

[1] Defendants filed a notice of manual filing, which includes videos labeled exhibits 2(A) through 2(K), attached to dkt. 52. The Court has reviewed all of the video footage designated and refers to the videos as labeled.

Bennett returned to the kiosk numerous times over the course of the hour to tap on the screen or look at the screen. Ex. 2(B) at 5:59–6:30, 21:31, 32:23–24, 50:00–50:34. On one occasion, Bennett went back over to the kiosk and waved through the window at the guards while pointing directly at the kiosk. *Id.* at 45:17–46:50. He attempted to use the kiosk and threw his arms up in apparent confusion. *Id.* Bennett later returned to the kiosk and again tried to gesture to officers outside the window and get their attention. *Id.* at 51:40–54:44.

On August 29, Bennett was released for recreation from 5:43 p.m. to 6:58 p.m. Dkt. 52-1 at 2; Ex. 2(C). After turning on the TV, he went straight over to the kiosk to tap at the screen. Ex. 2(C) at 0:58–1:00. Bennett returned to tap on the screen twice during his recreation time. *Id.* at 13:09–13:11, 40:25–40:29. Bennett talked to the guards three times (*id.* at 20:03–22:29, 29:00–31:00, 58:30–1:00:20) and attempted to get their attention (*id.* at 6:28–6:50, 12:45–13:00). He pressed the button at the door on three occasions and can be observed communicating with someone. *Id.* at 24:00–25:19, 42:29–44:01, 44:38–45:00. None of this video footage has audio. *Id.*

Bennett interacted with guards during medication pass from 7:01 p.m. to 7:03 p.m. Ex. 2(D) (body camera footage from Officer Johnson with sound). Body camera footage shows that Bennett requested discovery materials for his criminal case and stated it is his last day at the Jail. *Id.* Bennett did not request access to the kiosk or request a paper grievance and is confined inside his cell for the duration of this short interaction. *Id.*

Bennett received a breathing treatment from 9:35 p.m. to 10:05 p.m.  Dkt. 52-1 at 3; Ex. 2(E) (body camera from Officer Johnson during the breathing treatment with sound).  Bennett was released to the holding area and sat at a table, handcuffed on his hands and feet, to receive the breathing treatment from a machine.  Ex. 2(E).  Bennett again requested discovery materials and had a conversation about various topics with the guards, including that he will be leaving the Jail the next day.  *Id.*  Bennett did not request access to the kiosk or request a paper grievance.  *Id.*

Defendants also designate camera footage of other inmates using the kiosk on August 27, 28, and 29.  Ex. 2(G), 2(H), 2(I), 2(J), and 2(K).  This footage has no sound.

On August 30, at 3:54 a.m., Bennett was given his inhaler in his cell.  Dkt. 52-1 at 3; Ex. 2(F) (body camera from Officer West during inhaler administration with sound).  Bennett did not request access to the kiosk or request a paper grievance in this three-minute interaction.  Ex. 2(F).

**II.**

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when there is no genuine dispute over any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021).  A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477

6

U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that could be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 572–73 (7th Cir. 2017).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

### III.

### PLRA EXHAUSTION STANDARD

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions and the conduct of prison officials.

42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life[.]"  *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).  "To exhaust available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate."  *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)).  A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'"  *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

While the exhaustion requirement is strict, it "hinges on the availability of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."  *Ross v. Blake*, 578 U.S. 632, 642 (2016) (internal quotation omitted).  "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'"  *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 737–38 (2001)).  "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of."  *Id.* (internal quotation omitted).  In particular, "exhaustion is not required when the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance."  *Hill v. Snyder*, 817 F.3d 1037, 1041 (7th Cir. 2016).

"Because exhaustion is an affirmative defense," Defendants face the burden of establishing that "an administrative remedy was available and that

8

[Plaintiff] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

## IV.

## DISCUSSION

The parties' designated evidence shows that there is a dispute of fact as to whether the grievance process was available to Bennett in the three days following the alleged incident of excessive force on August 27.

At that time, Bennett was housed in segregation and only released from his cell for one hour a day, during which time he could access the kiosk system to submit a grievance. Construing the designated evidence in Bennett's favor (as we must on summary judgment), when Bennett was released on August 28 and 29 for recreation, he was unable to log in to the kiosk system with his pin number. *See* Dkt. 45 at 2; Dkt. 46 at 4–5. During recreation time, Bennett asked for a paper grievance and was denied the form. Lastly, Bennett brought the issue up with Captain Kolhouse when he was being transported out of the facility, and the captain did not provide him with the means to file a grievance.

Defendants respond that the evidence in the record "blatantly contradicts" these claims. Dkt. 51 at 4. Defendants argue that no reasonable jury could find in his favor because Bennett was released for an hour of recreation time on August 28 and 29, the kiosk manufacturer reported no malfunctions, other inmates used the kiosks, and three short body camera footage interactions indicate that Bennett did not request a paper grievance during those occasions. However, the video recordings designated by the Defendants of the two hours of

time during which Bennett was released for recreation on August 28 and 29 had no sound.  *See* Ex. 2(B); Ex. 2(C).  These videos show that Bennett talked to the guards at least nine times on August 28, and three times on August 29.  Bennett also presses the button at the door on at least three occasions to communicate with someone.  Further, the video footage does show Bennett attempting to use the kiosk system almost immediately on both days and returning to tap on the screen several times over the course of the hour.  Thus, the video footage does not resolve the dispute of fact as to whether Bennett requested a paper grievance or if he was able to log into the kiosk system.

Further, construing the ambiguous videos (because there is no sound) in Bennett's favor on summary judgment, the videos appear to *support* Bennett's version of events that he attempted to use the kiosk but could not.  *See* Ex. 2(B) at 45:17–46:50, 51:40–54:44 (Bennett throwing up his arms in frustration and gesturing to officers).  *See Kailin v. Village of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023) (collecting cases where video was not dispositive and noting that "[i]t should be considered a rare case where video evidence leaves no room for interpretation by a fact finder"); *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) ("As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants." (citing *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003))).  It is possible that witness testimony may resolve the ambiguities of the soundless videos.  But that would only confirm that this Court cannot resolve this issue on the papers.

Defendants have submitted three videos that contain sound, which are body camera footage of guards interacting with Bennett for medical reasons. Two of these occasions were less than three minutes long, and Bennett was in his cell receiving medication or an inhaler. Ex. 2(D); Ex. 2(F). Bennett makes conversation during this medical visit, but he is shackled on his hands and feet and breathing through a machine for the duration of the visit. Ex. 2(E).

But these videos of Bennett's medical exams are legally irrelevant at this stage of the proceedings, given Bennett's declaration made under penalties for perjury that during his recreation time he requested and was denied paper grievance forms from the guards, who were required to provide the paper grievance if inmates do not have access to a kiosk. Dkt. 38-1 at 20. Given the lack of audio evidence to plainly refute this evidence, Bennett has successfully established a material issue of fact that precludes summary judgment under the Seventh Circuit's holding in *Hill*, 817 F.3d at 1041. That decision holds that the PLRA does not require an inmate to go on a "scavenger hunt[]" asking several members of prison staff—including medical staff—for a grievance form if he sought the required form from an appropriate individual and was denied it. *Id.* And that's what Bennett says occurred after he unsuccessfully attempted to use the kiosk on August 28 and 29.

Defendants' argument that the kiosk manufacturer reported no outages during the relevant time is similarly not dispositive. Bennett has submitted a declaration made under penalties for perjury that the jail staff have a way of "turning off the kiosk to where inmates are not able to log in." Dkt. 54 at 2–3;

11

Dkt. 54-1.  On prior occasions, Bennett was using the kiosk, the phone, the lights, and the showers, while they were turned off by jail staff.  Dkt. 54 at 3. Also, while the kiosk is down and inmates cannot log in, inmates can utilize the kiosk to access law library materials.  Dkt. 54 at 2.  This factual dispute created by conflicting declarations also precludes summary judgment.  *Johnson*, 892 F.3d at 893.

Lastly, both parties seem to agree that after Bennett left the jail on August 30, he no longer had the ability to grieve his allegations from August 27.  Thus, if Bennett had completed the first step of the grievance process, the remaining three appeals were plainly unavailable to him.

Given the parties' factual disputes, Defendants have not carried their burden on summary judgment of proving that Bennett failed to exhaust his administrative remedies.  Therefore, Defendants are not entitled to summary judgment on their exhaustion defense.

## V.

## PENDING MOTIONS

Defendants have filed a motion to strike Bennett's surreply, or in the alternative, for leave to file surrebuttal.  Dkt. [56].  This motion is **DENIED.**  This motion is premised on Defendants' argument that Bennett's surreply was one day late, as it was filed on August 5 and the deadline was August 4.  However, because Bennett is incarcerated, the prison mailbox rule applies.  *Taylor v. Brown*, 787 F.3d 851, 858–59 (7th Cir. 2015) (under the prison mailbox rule, pleading is treated as being filed when it is handed over to prison staff for

12

mailing).  Bennett signed his surreply on August 1, but Pendleton scanned and submitted the document for filing on August 5.  The Court finds that Bennett's surreply is timely.  Defendants' request to file a surrebuttal within seven days of the Court's order, dkt. [56] at 1–2, is also **DENIED**.

Bennett filed a motion to strike the Defendants' motion to strike.  Dkt. [59]. This motion is **DENIED** as unnecessary.  Bennett has also filed a "motion to take notice," dkt. [57].   This motion is **GRANTED** to the extent that the Court considered it in ruling on the summary judgment motion.

## VI.

## CONCLUSION

Bennett has presented some evidence that the grievance process was unavailable to him.  Specifically, his declaration made under penalties for perjury states that the kiosk was not working on August 28 and 29 and that when Bennett notified jail officials of this fact and requested grievance forms, officials denied him the forms.  This evidence creates a material factual dispute precluding summary judgment on the exhaustion defense.

Therefore, Defendants' motion for summary judgment, dkt. [36], is **DENIED.**  Defendants shall have through **April 16, 2026,** to withdraw their affirmative defense or request the material factual dispute be resolved at an evidentiary hearing consistent with *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

The Court recognizes that the Supreme Court partially overruled *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), in *Perttu v. Richards*, 605 U.S. 460 (2025).

Specifically, "parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." *Id.* at 479. Here, Bennett's allegation that he was denied a paper form and that the kiosk was not working does not appear to be intertwined with the merits of his excessive force claim such that Bennett would be entitled to a jury determination on the issue. However, **if Defendants request an evidentiary hearing, they shall address whether *Perttu* applies in this case in their request,** and if it does apply, how they propose to proceed. If Defendants do request an evidentiary hearing, Plaintiff shall have until **May 7, 2026,** to address any objections he has to their response and whether he believes *Perttu* applies.

The parties' motions to strike, dkts. [56] and [59], are **DENIED.** Plaintiff's "motion to take notice," dkt. [57], is **GRANTED** to the extent that the Court considered it.

**IT IS SO ORDERED.**

Date: 3/26/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

KEVIN BENNETT
220783
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Jonathan E. Halm
Kightlinger & Gray, LLP
jhalm@k-glaw.com

14